IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT ABBOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-0863-CV-W-NKL |
| | ) | Crim. No. 01-0311-CR-W-NKL |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

Pending before the Court is Robert Abbott's ("Abbott") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. # 1]. For the reasons set forth below, the Court denies Abbott's Motion.

**I. Background**

　**A. Abbott's Indictment and Trial**

Abbott was indicted in a superseding indictment on two counts of distributing cocaine. Count One charged Abbott with conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. The range of punishment for Count One was ten years to life in prison.

Count Two charged Abbott with aiding and abetting in the distribution of at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. The range of punishment for Count Two was similarly, ten years to life.

In January 2003, after a three-day trial, the jury found Abbott guilty on both counts

1

of the superseding indictment.

### B. Abbott's Sentencing

#### 1. *The PSR*

After his conviction, the United States Probation Office completed a Presentence Investigation Report ("PSR"). In the PSR, the Probation Office stated that Abbott was part of a large network that distributed cocaine. Based on his role in the conspiracy, the PSR attributed 213 kilograms of cocaine to Abbott, which resulted in a base offense level of 38 under the federal sentencing guidelines. According to the PSR, the Probation Office calculated this figure using the most conservative estimates available. The PSR also assigned to Abbott a three-level enhancement based on his role in the offense because he acted as a supervisor or manager of the conspiracy. The Probation Office also assigned a two-point enhancement because Abbott obstructed justice when he perjured himself during his jury trial. The PSR recommended a total offense level of 43, which was the sum of Abbott's base offense level and his two enhancements. Based on his criminal record, the PSR recommended that Abbott be assigned a Criminal History Category of I. Under the federal sentencing guidelines, the corresponding range of punishment for a total offense level of 43 and a criminal history category of I is life imprisonment.

Abbott did not contest the factual assertions contained in the PSR; instead, he objected to the manner in which the PSR applied those facts. First, Abbott contested the base offense level of 38. Abbott argued that the base offense level should have been

calculated using the cocaine that was directly attributable to Abbott--not the quantity of cocaine attributable to the conspiracy as a whole. Using this calculation, Abbott argued that the Government could only connect him to 34 kilograms of cocaine and that his base offense level should be 34 rather than 38. Abbott also objected to the application of the two-level enhancement for obstructing justice by perjuring himself at trial. Abbott objected to the three-point enhancement for his role in the offense because he argued he did not supervise or manage any subordinate members of the conspiracy.

## 2. *Sentencing Hearing*

On July 31, 2003, this Court conducted a sentencing hearing and heard evidence regarding Abbott's objections to the PSR. The Court heard arguments from both parties and it reviewed some trial testimony of Timothy Hughes ("Hughes")--one of Abbott's co-conspirators. Based on the testimony, the Court found that 83 kilograms of cocaine should have been attributed to Abbott, which adjusted his base offense level down by two points to 36. Regarding his three-point enhancement for his role in the offense, the Court overruled Abbott's objection and imposed the enhancement. The Court found that Abbott had played a significant role in the conspiracy because he had traveled to Mexico to procure sources of cocaine, he recruited other participants in the conspiracy, and his residence in Kansas City served as a local clearinghouse for the cocaine. Regarding his two-point enhancement for obstruction of justice that derived from his perjury, the Court overruled Abbott's objection, noting that Abbott's trial testimony was "incredible" and there was "no explanation for his testimony." *See* Sentencing Transcript at p. 43.

After the Court's adjustments, Abbott's total offense level was 41 and his criminal history category remained at I. Under the federal sentencing guidelines, the corresponding range of punishment for these calculations is 324 to 405 months of imprisonment. The Court sentenced Abbott to 360 months' imprisonment on both counts, to be served concurrently. Abbott appealed his conviction and sentence and the Eighth Circuit affirmed in June 2005. Abbott subsequently filed his § 2255 motion.

### C. Abbott's Pending Motion

In his Motion, Abbott raises three grounds for relief: (1) his sentence violated the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. 220 (2005); (2) his counsel provided ineffective assistance when he did not pursue a plea bargain on behalf of Abbott; and (3) his counsel provided ineffective assistance when he failed to object to the Government's "improper bolstering and vouching for the credibility of its witnesses compounded with the Court's improper jury instructions." *See* Abbott Motion [Doc. # 1] at p. 15.

## II. Evidentiary Hearing

On a motion to vacate, a movant is entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief. *Payne v. United States*, 78 F.3d 343 (8th Cir. 1996) (citations omitted). However, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face. *Id.* Moreover, a district court need not hold an evidentiary hearing in a section 2255 case when the files and records

4

conclusively show that the movant is not entitled to relief. *See Bradshaw v. United States*, 153 F.3d 704 (8th Cir. 1998). After reviewing the records and files, the Court concludes that all of Abbott's claims can be fully and fairly evaluated on the existing record and no evidentiary hearing is necessary.

**III.     Discussion**

All three of Abbott's grounds for relief contain some component of an ineffective assistance of counsel assertion. To establish ineffective assistance of counsel, a movant must satisfy a two-part test. First, the movant must prove that his counsel's representation was deficient, and second, that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance is deficient if he or she "failed to exercise the customary skills and diligence that a reasonably competent attorney would have exhibited under similar circumstances." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (internal quotation omitted).

The prejudice component "focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Further, "[w]hen considering whether the defense suffered prejudice, [the] court must determine whether there is a reasonable probability (sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been

5

different." *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) (internal quotation omitted). This two-part test also applies where a defendant challenges a guilty plea based on the counsel's purported ineffective assistance. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

### A. Abbott's Sixth Amendment Challenges

Abbott contends in his Motion that the sentencing enhancements imposed by the Court violated his Sixth Amendment rights because the facts underlying the enhancements were not presented to the jury or contained in the superseding indictment. In support of his contention, Abbott directs the Court to *Apprendi*, *Blakely*, and *Booker*.

#### 1. *Apprendi*

Abbott argues that his sentence violated *Apprendi*. In *Apprendi*, the Supreme Court held "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. After *Apprendi,* and prior to the Supreme Court's ruling in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Eighth Circuit applied *Apprendi* only in the situation where a defendant's sentence exceeded the maximum length of time set out in the statute governing the defendant's conviction. *See United States v. Francis*, 367 F.3d 805, 820 (8th Cir. 2004), *rev'd* 125 S. Ct. 988 (2005); *United States v. Walker*, 324 F.3d 1032, 1041 (8th Cir. 2003), *cert. denied* 540 U.S. 898 (2003); *United States v. Aguayo-Delgado*, 220 F.3d 926, 933 (8th Cir. 2000), *cert. denied* 531 U.S. 1026 (2000).

6

In the instant case, the statutory maximum punishment is life imprisonment. 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 18 U.S.C. § 2. Abbott was sentenced only to 360 months' imprisonment. Thus, his sentence did not exceed the maximum amount of imprisonment set forth in the statutes and *Apprendi* does not apply.

### 2. *Blakely* and *Booker*

Abbott also argues that his sentence violated the Supreme Court's recent decisions in *Blakely* and *Booker*. However, the Court sentenced Abbott in July 2003, but *Blakely* was not decided until June 2004 and *Booker* was not decided until January 2005. Thus, to impact Abbott's sentence, those cases must apply retroactively.

In *Never Misses A Shot v. United States*, the Eighth Circuit held that *Booker* did not apply retroactively because it was a new rule that was procedural, rather than substantive, in nature. 413 F.3d 781, 784 (8th Cir. 2005) (per curiam). Similarly, in *United States v. Stoltz*, the Eighth Circuit held that the rule announced in *Blakely* did not apply retroactively on collateral review and applied the same reasoning set forth in *Never Misses A Shot*. 149 Fed. Appx. 567, 2005 WL 2484417 (8th Cir. 2005). Thus, neither *Blakely* nor *Booker* apply retroactively to cases on collateral review and they provide no relief for Abbott.

### 3. *Assistance of Counsel*

To the extent that Abbott claims his counsel provided ineffective assistance by failing to raise issues ultimately resolved in *Apprendi*, *Blakely* and *Booker*, his claim must fail.

7

### a. *Apprendi*

At the time of Abbott's sentencing in July 2003, the Eighth Circuit had already determined that so long as Abbott's sentence did not exceed the statutory maximum, *Apprendi* did not apply. Furthermore, as of the time of Abbott's sentencing, every other circuit court interpreted and applied *Apprendi* in the same way as the Eighth Circuit. *See United States v. Reyes-Echevarria*, 345 F.3d 1, 6-7 (1st Cir. 2003); *United States v. Garcia*, 240 F.3d 180, 182-84 (2nd Cir. 2001); *United States v. Williams*, 235 F.3d 858, 862, 63 (3rd Cir. 2000); *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001); *United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000); *United States v. Lawrence*, 308 F.3d 623, 634-35 (6th Cir. 2002); *United States v. Knox*, 301 F.3d 616, 620 (7th Cir. 2002); *United States v. Ochoa*, 311 F.3d 1133, 1135-36 (9th Cir. 2002); *United States v. Jackson*, 240 F.3d 1245, 1249 (10th Cir. 2001), *cert. denied* 540 U.S. 851 (2003); *United States v. Harris*, 244 F.3d 828, 829-30 (11th Cir. 2001); *United States v. Fields*, 251 F.3d 1041, 1043-44 (D.C. Cir. 2001), *cert. denied* 540 U.S. 961 (2003). Hence, Abbott's counsel was not deficient because he failed to make an *Apprendi* challenge. *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002).

### b. *Blakely* and *Booker*

The Court sentenced Abbott in July 2003, but *Blakely* was not issued until June 2004 and *Booker* was not issued until January 2005. As a general rule, an attorney's failure to predict or anticipate changes in the law cannot support a claim for ineffective assistance of counsel. *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999) (citations

8

omitted); *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996); *Wajda v. United States*, 64 F.3d 385, 388 (8th Cir. 1995) ("[C]ounsel's performance is not deficient by failing to predict future developments in the law."). With the benefit of hindsight, courts can now look at *Blakely* and *Booker* and view them as a logical extension of the holding in *Apprendi*. However, at the time of Abbott's sentencing in July 2003, courts uniformly held a different view of sentencing enhancements and it would have been virtually impossible for Abbott's counsel to anticipate the ruling in *Blakely* and *Booker*. Given the circumstances at the time of Abbott's sentencing, it was not error for his counsel to fail to anticipate the Supreme Court's pronouncement in *Blakely* and *Booker*.

### B. Abbott's Plea Options

In his second ground for relief, Abbott asserts that his counsel was deficient because he did not pursue a plea bargain on behalf of Abbott. According to Abbott's Motion, the evidence against him was "patently overwhelming" and he considers his decision to pursue the jury trial to be "suicidal." *See* Abbott Motion [Doc. # 1] at pp. 8 and 13, respectively. Had Abbott's counsel availed him of his plea options, then he would have "accepted the government's plea offer and provided substantial assistance to the authorities for purposes of seeking a lesser sentence."

In response, the Government procured an affidavit from Bruce Simon ("Simon"), Abbott's trial counsel.[1] In his affidavit, Simon recounts that he explained to Abbott his

---

[1] The affidavit is attached as Ex. C to the Government's Opposition [Doc. # 5].

9

plea options and that Abbott maintained his innocence throughout the proceedings. This is consistent with Abbott's statements during the sentencing hearing where he continued to try to minimize his role in the conspiracy and argue that he did not commit the crimes charged. *See* Sent. Tr. at pp. 97-101. Moreover, in his Motion, Abbott acknowledges that he was "bent" on pursuing trial and he suggests that it was somehow Simon's responsibility to talk him out of it. *See* Abbott Motion [Doc. # 1] at p. 13.

Based on the sentencing transcript and his counsel's affidavit, there is no reasonable basis for this Court to find that Simon's representation was deficient. On the one hand, Abbott asserts that Simon should have pursued a plea agreement with the Government, but the uncontroverted evidence is that he maintained his innocence throughout the entire proceeding. Thus, Simon's efforts would have been in vain and it is only with the benefit of hindsight that Abbott now wishes to reconsider his litigation strategy. There is no basis for finding that Simon's conduct fell below an acceptable standard and Abbott cannot satisfy the first prong of the *Strickland* analysis.

### C. Trial Conduct

Abbott asserts that the prosecution wrongfully referred to the convictions of his fellow co-conspirators during opening and closing statements. Moreover, Abbott asserts that the evidence about the convictions predisposed the jury to find him guilty under a "guilt by association" theory. A corresponding argument presented by Abbott is that his trial counsel was ineffective because he failed to object to the questioning of the co-conspirator witnesses regarding their convictions.

10

Abbott is essentially arguing that the Government wrongfully told jurors that Abbott's co-conspirators had been convicted of the same conspiracy, and that misconduct caused an unfair trial.

Courts consider the following factors in weighing the impact of prosecutorial misconduct: (1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative action taken by the district court. *United States v. Beal*, 430 F.3d 950, 955 (8th Cir. 2005) (citing *United States v. Beeks*, 224 F.3d 741 (8th Cir. 2000)). Even assuming that the Government's reference to the co-conspirator's conviction was misconduct, which the Court will assume for the limited purpose of adjudicating this ground for relief only, Abbott still fails to establish that he did not receive a fair trial because of the misconduct. In his Motion, Abbott himself concedes that the evidence against him was overwhelming and that he stood little chance of being acquitted of the charges. Thus, the "strength of the properly admitted evidence" was substantial. Moreover, there is no basis for finding that the alleged misconduct was pervasive. Abbott does not direct the Court to any transcript references or any other trial records to demonstrate that the comments were so pervasive as to poison the jury against him.

Abbott directs the Court to the Fourth Circuit's holding in *United States v. Mitchell*, 1 F.3d 235 (4th Cir. 1993), but that case is factually distinguishable. In *Mitchell*, the court held that the prosecutor's repeated reference to the conviction of the defendant's brother for his participation in the same conspiracy constituted prosecutorial

11

misconduct and warranted a new trial. However, in that case, the prosecutor emphasized the familial relationship between the brother and the defendant and encouraged them to infer that the defendant must also be guilty based on his brother's guilt. Also, the brother in that case had been convicted after a jury trial and the prosecutor implored the jury to reject the brother's testimony because an earlier jury had already rejected it.

In the instant case, there is no evidence that the prosecutor attempted to draw a familial or other link between Abbott and his co-conspirators. Moreover, the co-conspirator witnesses in the instant case had not been convicted by a jury--their testimony was the result of plea bargains--and the prosecutor did not attempt to impute one jury's findings to the jury in Abbott's trial. Thus, *Mitchell* is factually distinguishable and the pervasive misconduct that existed in that case does not exist in the instant dispute.

Given that Abbott has failed to establish that the misconduct was pervasive and that the other evidence against him was weak, the Court cannot find that the alleged misconduct warrants a new trial. Accordingly, the Court will deny Abbott's third ground for relief.

Abbott's third ground for relief also states that his trial counsel was ineffective for failing to object to the misconduct. However, given that Abbott cannot establish prosecutorial misconduct or that it impacted his proceedings, then his counsel's failure to object to it cannot be construed to have fallen below the objective degree of competence set forth in *Strickland* and its progeny. Thus, to the extent that Abbott claims ineffective assistance of counsel on this point, that claim is denied.

12

## IV. Conclusion

Accordingly, it is hereby

ORDERED that Abbott's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. # 1] is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

DATE: January 17, 2006
Kansas City, Missouri